Good morning, Your Honors. Good morning. William Darrow, representing the United States from the District of Vermont. The parties are before you this morning in the wake of habeas or collateral Section 2255 litigation before the District Court up in Vermont. The District Court, Judge Murtha vacated on Section 2255 review a 2012 sentence that the parties had agreed to under Rule 11 C1C, the vacature order being in 2016. The government submits on appeal that the District Court erred in so doing, fundamentally for two reasons. First, because it was a stipulated sentence the parties had agreed to under Rule C1C. And secondly, because a 112-month sentence, which it was for a recidivist offender, was not a fundamental miscarriage of justice, the predicate for Section 2255 review. What was he facing under the guidelines, Mr. Darrow? Had the government and he not stipulated to the 112-month sentence? There are two guideline analyses, one in a 2012 pre-sentence report, the second in a 2016 pre-sentence report, which Judge Murtha ordered prior to . . . Pre-sentence? Yes. In 2012, the Hoskins was facing a career offender sentence of, I'm thinking, 155 to 181 months, something like that, and indeed, that's the pivot that brings us before you is that Hoskins after sentencing, in 2015, persuaded a Vermont state judge to vacate one of the predicates for his career offender status, and that's the reason why he then went back for Section 2255 review. Now continuing with your question, the 2012 pre-sentence report found the career offender sentencing guideline. They also did a non-career offender guideline range, which was very low, because the pre-sentence investigation at the time had only the, I'm thinking, 10 or 11 controlled, fairly small crack cocaine buys from the defendant. The government didn't turn over the grand jury transcripts reflecting the investigation it had engaged in, which both parties were familiar with, for purposes of that 2012 pre-sentence report. Which you're not supposed to do. The Attorney General's guidelines on this, or the U.S. Attorney's report, says you're the full scope of the crime, right? So I don't understand how you justify that you didn't turn that over them, but the point is you didn't. We didn't, Your Honor. As you know, under Rule 6, grand jury transcripts or proceedings before the grand jury are ordinarily confidential. We didn't, because we didn't, since the parties— I don't really want to pursue this. Okay. But you don't know darn well. You had that information separate and apart from the grand jury, so let's not mince words. You did what you did because you were cutting a deal with the guy then, and when he came back for sentence, you were no longer interested in any kind of generous treatment. And so then you held him accountable for the full quantity of drugs that he did, I think 330 grams. I think that's right. I'm suggesting to you you're not supposed to withhold information from the sentencing court. But go ahead. That's not the argument today. Okay. I mean, it certainly informs what happened. But in any event, Hoskins is arrested in mid-2011 in the wake of 10 or 11 controlled drug buys. Since he was an alumnus from the federal court in my office in Vermont, we took the case, indicted him on a single-count, initial one-count charge based on one of the buys, investigated the case, and then in late 2011, negotiated with the defendant how to resolve it. Government was poised to bring a superseding charge alleging a mandatory minimum, which with an 851 notice would have doubled the low end of the mandatory minimum. The defendant was also a career offender. The parties compromised their respective sentencing positions with a Rule 11 C1C deal at 112 months. At the time, the government thought that the probable non-career offender guideline range would be 100 to 120 months, and that was about the middle of that range. In Vermont, it's extraordinary to get a career offender sentence. You usually get a sentence in the non-career offender range, and so that's where we were negotiating. Well, all of this being as it may be, the issue, I think, isn't it the only issue whether the situation created by the Vermont court creates an injustice here? Yes. The fundamental issue, if it's just one issue, it's ... Well, it drives everything, doesn't it? It does. It's whether or not there was a fundamental miscarriage of justice. A complete miscarriage of justice. Yes. Right. So, you address that. Okay. Hoskins begins the offense conducted issue immediately after completing his second supervised release violation, getting out of Bureau of Prison's custody in the wake of completing that in late 2010. A prior district court in Vermont had sentenced him to 84 months. The last time around, it had been reduced to 70 with the retroactively reduced sentencing guideline ranges for crack cocaine. Then he'd violated supervised release twice. We submit that a 112 month sentence, less than half of the maximum statutory penalty for a recidivist offender is not a fundamental miscarriage of justice. I thought your argument was that his plea agreement did not use the career offender guideline and provided for a sentence that was well below it. Do I understand you correctly? We ... And you're arguing basically it couldn't have been a miscarriage of justice because he wasn't sentenced within the career offender guideline. I thought that was your argument. It is. And I think those are both two ways of going at the fundamental, complete miscarriage of justice. Now, the district court, in granting relief, said that it gave its 112 month sentence in light of the career offender enhancement. The career offender calculation provided the framework for the court's acceptance of the agreement. I'm quoting from the district court's decision here. So where I understand we're not, the sentence was not within the career offender range, where the district court nevertheless said it informed its decision. How does that affect our, you know, substantial injustice analysis? Well, a couple things about that. First of all, if the standard applied by the district court, basically, when I imposed a sentence, I was thinking that these other sentencing guideline enhancements applied. If that standard were to go forward with 2255 litigation as a fundamental miscarriage, complete miscarriage of justice, then any error as to guideline enhancements or adjustments that were discovered post-sentencing could subvert the original sentence. And there, am I correct that you're saying that both the Supreme Court and our sister circuits have concluded that once you're out of the mandatory guideline regime, that that cannot be an argument for a substantial injustice? Isn't that the argument you're making? Yes. A series of several circuit courts have held that, well, first of all, sentencing guideline errors are not cognizable on 2255 review, but in particular, even persons who were sentenced as career offenders and received a career offender sentence, not a below-career-offender sentence, as Mr. Hoskins, who later lose their career offender status because of circumstances, exactly, that that does not rise to a complete miscarriage of justice under Section 2255. And we also have him losing his career offender status under, it seems to me, somewhat interesting circumstances. The Vermont court did not conclude that the criminal conduct was not prohibited in Vermont. It found that his allocution was insufficient because it was simply an inquiry to his lawyer as to whether stipulated facts were correct, and there was no colloquy with the defendant himself, which the Vermont court said was essential. So that's not, I assume that led to a vacator? Yes. Okay. And what happened after that in Vermont to that charge? Well, that was a 2002 conviction that the Vermont court threw out in 2015, and in the wake of that, the Vermont didn't . . . For an inadequate plea, are you saying the Vermont court reversed it, or did it vacate because the plea allocution was not satisfactory? The latter. The latter. Okay. So then, once it was vacated, what happened in Vermont to that charge? They didn't . . . The state didn't pursue the charge. They dismissed it? Well, the court threw it out, and the court didn't pursue it. So I suppose you're right. If, in the wake of being thrown out, there's still a charge there, it was dismissed. But I think so much time had gone by that they didn't want to pursue it, and Mr. Hoskins was serving a substantial federal sentence. All right. He was already on . . . He was serving federal time at the time. Precisely. In this case? Yes. Yes. And the state will often do that. If someone's serving a good federal sentence, they'll let things go at the state level. So in any event, we believe that the lower court erred in, first of all, throwing out a sea deal that the parties both reached. I mean, at the 2012 sentencing, Hoskins went before the court and said, Your Honor, please sentence me to 112 months. And in so doing, he avoided stronger penalties, not only possibly for career offender, although as I say, those are very rare, but also for a statutory man-man. The government also urged that both parties came together with that stipulated sentence, and once the court accepted it, we think it was binding, pursuant to the language of Rule 11C1C, and should not have been vacated later. Second of all, we also urge that the complete miscarriage of justice standard sets a very high bar for 2255 review, because the law is that once a sentence, a final conviction becomes final, it's not supposed to be changed or revisited in future, absent a complete miscarriage of justice, such as actual innocence. For example, the only Supreme Court case to find one was found actual innocence. And so we don't think that we think that that sentence was binding. Also, as just on the circumstances here, you know, this defendant is a recidivist offender. He gets 84 months from Judge Sessions on his first Federal sentence, comes back, long criminal history, lengthy dealing right after getting out for his second supervised release violation, and is charged again. We think 112 months was a modest increment over his last sentence and was not a miscarriage  He reserved rebuttal. Thank you, Your Honor. May it please the Court, my name is Barclay Johnson, I'm attorney with the Federal Defender's Office in Vermont. I'm very pleased to be here on behalf of Mr. Hoskins. Mr. Hoskins' claim falls squarely within well-established Supreme Court and Court of Appeals precedent, including from this Court. To escape this, the government resorts to mischaracterizing his claim into other red hearings. To start with, even in its reply brief, the government continues to urge that Mr. Hoskins is merely raising some type of guideline application error. It's wrong. From the beginning, Mr. Hoskins has argued that the guideline calculation was correct, but that a conviction upon which the sentence was based is no longer valid, and that Mr. Hoskins is entitled to be resentenced under well-established Supreme Court and appellate precedent. It's not— What is that error? If it's not a guideline calculation error, what is the error? Right. So it's not a claim that, in light of many of the cases the government— What's the error? Yes. The error, it's a factual error. It's not a legal error. It's a factual error. The due process or miscarriage of justice here is exactly what the court has identified, and that's that Judge Murtha makes it clear that the guidelines here, the career offender guidelines, are having exactly the lodestone or framework effect that the Supreme Court has described when he says, I'm accepting this 11C1C plea because he's facing a higher career offender sentence. And all this happens because a sentencing judge, here it's Judge Murtha, is required by statute to consider the sentence called for by the guidelines. Tell us how that doesn't get addressed by the Supreme Court in Ad Nisio, which suggested that a guideline error calculation is not a constitutional or jurisdictional concern and that you need a complete miscarriage of justice to get 2255 relief based on a misapprehension as to the applicable guidelines. Again, this isn't a misapprehension as to the guidelines or— But that's what you just told us, that the error is that the court assumed that, but for the plea deal, he would have been subject to the career offender guidelines. Right. But this is— That's a misapprehension about the guidelines. I don't think so. The cases that the government relies on are all cases where some subsequent legal decision, perhaps from the Supreme Court, like Begay, affects the legal conclusion that the sentencing judge drew. And I'm still having trouble with what you think the error is that reflects that warrants relief here. I thought, and I was trying to write it down when you said it, that there was a factual error regarding his being subject to the career offender guidelines. The facts have changed. There was no error in the sentencing. Now, the fundamental facts upon which his sentence was based, facts, indeed, that the court was required to base his sentence on, have changed. That's the—I'm reluctant to call it an error, but that's what's changed. It's not a legal error. It's a factual change. Ad Aenesio— But it's a factual change as to what legal standard applied to him. I mean, I think you're perhaps trying to parse too narrowly here. I mean, you're saying the judge, when he sentenced him, thought that he was a career offender and didn't think that that sentence was appropriate because he wasn't under mandatory guidelines. He had to exercise his Booker discretion here. And he thought the plea deal was appropriate. And now he's finding out, well, he isn't a career offender under, as I said, somewhat curious circumstances here. I'm not sure how that doesn't fall squarely within the standards talked about by Ad Aenesio in most of the circuits that have said that a guideline calculation error doesn't result in a complete miscarriage of justice. Several questions. Ad Aenesio, though, isn't dealing with guidelines. Ad Aenesio is dealing with the judge's assumption about how parole is going to affect the individual being sentenced. And the Supreme Court there said, parole commission changing its policy doesn't satisfy 2255 because, quote, this change did not—change affected the way in which the court's judgment and sentence would be performed, but did not affect the lawfulness of the judgment then or now. We're not arguing— It affected how the judge exercised his judgment, but it doesn't affect the lawfulness of the sentence. But we're talking about when he exercised his judgments. Ad Aenesio, it's the judge right in the moment saying, I think something in the future is going to happen. Here we have the judge being—winding up being correct about—incorrect about that. The complete miscarriage of justice standard is the part of 2254 that we're looking at here? It's one of the parts. We also believe and have argued that there's a due process violation for precisely the same reasons. So we're not—back to Ad Aenesio—we're not arguing that Judge Murtha thought the sentence would be carried out differently. Instead, the claim here goes to the lawfulness of the sentence. And we're arguing that that central fact, here the prior conviction upon which the sentence was based, and which it had to be based under 22—under 3553A— Based on it, it's a factor that the judge—I mean, you guys know how rare 11C1C pleas are and its predecessors are in the District of Vermont. So the judge looks at this. You guys cut a deal and say this is a fair disposition of this case and whatever weight the judge gave the guidelines, which were not mandatory at the time, reached a conclusion that all right, this is one of those rare circumstances when a district judge in Vermont signs off on 11C1C plea and imposes that. So what's the problem here? The problem here is that this Court, the Supreme Court, in fact the courts of appeal, are universally assumed that in these circumstances, when you have a prior conviction that's vacated that has enhanced your sentence, you're entitled to— It didn't enhance the sentence. You guys dealt around that. It wasn't us guys, but yes, it was dealt around. Your predecessors dealt around that. I agree with you to a certain extent, but— He was sentenced within the guidelines that would have applied for not being a career offender, and that was a deal that was cut to avoid him being treated as a career offender. So he's not treated as a career offender. What's happened now is that a conviction that would have made him a career offender is vacated or dismissed, not because anybody found that he was not guilty of it or even that the government hadn't proved its case at trial, but rather because the guilt was established through a statement by his lawyer rather than a colloquy with the defendant. I mean, that's hardly a finding that he's innocent. So I'm having trouble understanding how we would ever conclude that the sentence standing represents a complete miscarriage of justice. You know, it's a — it's within the range that would have applied if he hadn't been a career offender. How is it a complete miscarriage of justice? We know that — know about the range that would have applied now, but at the time he was facing a much lower guideline range precisely because of the information given to the court by the judge. I thought in the e-mail exchanges with counsel — I see, it was 84 to 105 months that defense counsel thought he was — that it was applicable and the deal was struck at 112, is that right? Yes. The bottom line, though, is that as a career offender, he faces a higher sentence. Even if you're comparing the career offender sentence to what the final guideline calculation was most recently, it's still a four-year increase on the bottom end and a five-year increase on the top end. That's a big — Was he a career offender? Yes. Yes, but he wasn't sentenced within the career offender guidelines. But he was — he was literally a career offender and the judge took that into consideration. And he — the judge has to take that into consideration and that's what's having the lodestone effect. Why does the judge have to do that? Because of 3553A. It's error if you were to not do it or if you were to have done it incorrectly. And this is the fallacy of the government's argument. It wants the court to believe — The judge was already — was presented with, here's the deal, judge. Judge, this many months, period. But that's not — that's not — that's not how our sentencing system works. The sentencing system — 11E1C1C? The judge still has to take into account the applicable guideline range. If you were to not do that, that would be error. If you were to do it incorrectly, it would be error. Isn't it — isn't it clear that the Vermont court, state court, acted to revisit this — this conviction because the conviction enhanced the federal sentence? That's true. That's — And — and — and it didn't enhance the federal sentence, did it? Because it — it didn't enhance the federal sentence. I think — I think, no. It clearly did. The Vermont court was led to believe something that probably ain't so. And that is the — the evident reason why they revisited the adequacy of a plea allocution 13 years later. I mean, it's — it would be very odd to do that. And what I'm — what I'm concerned about and what I'm going to ask you about is whether if that can create a complete miscarriage of justice, then surely state courts can continue to create, as it were, miscarriages — complete miscarriages of justice that affect people's criminal history and their career offender status just by revisiting decades-old convictions. That's going to — isn't that going to unsettle the — the sentencing system in the federal courts? There's several points. Go ahead. I know my time has expired. No, go ahead. Don't worry about that. But I'd like to respond to all of them, if I could. Please. I think one thing you're suggesting is maybe the floodgates would be opened by this. And I think the fact that, really, this is the third case in, you know, almost two decades to have an issue like this suggests that that's not the case. Two — But it — it is — I mean, the thing about floodgates is they open at a certain point. But if they would have opened already, if that were — But you are conceding that if you are correct, then state courts can, as it were, create these kinds of complete miscarriages of justice simply by revisiting an old conviction and without even deciding that the person didn't do it, just deciding that there's a flaw in the proceedings. But I think that would also — And do it for the purpose of effecting a federal sentence. I think that would also — you have to keep in mind that there are other requirements such as timeliness and diligently pursuing the remedy that narrow the floodgates quite a bit to the extent there are any floodgates. This conviction increased the sentence. There's no way, I think, to get around the Supreme Court's admonition that the sentencing guidelines, even today, have this lodestone or framework effect. And that is exactly what Judge Murtha is saying when he — It increases sentence when he wasn't sentenced within the guidelines that were determined by that factor. I mean, in fact, what the district court did was show that it was giving lesser weight to that factor by accepting the plea agreement. There would be no other way it could justify it. I think you see — that's what the lodestone does. It moves the bar. And so the judge says, well, the bar is over here, and so this sentence over here looks reasonable. But then, resentencing, when the bar is somewhat further over here, the sentence looks reasonable somewhat further down the line. You're saying it has a — it has a hydraulic enhancing effect. That may be even more apt than the Supreme Court's lodestone analysis. No. Because all the cases you rely on involve mandatory guidelines and an enhanced sentence, and those mandatory guidelines then enhancing the sentence. Here, we have quite the opposite. We're dealing in a discretionary guideline regime, and we're dealing with a sentence that was below that range. Once the district court decided not to sentence him within the career offender guideline range, all it had to consider was how the totality of 3553 factors — 3553A factors yielded a sentence that served — served justice. I — I don't think so, Your Honor. First of all, this Court's decision in DeVost wasn't a mandatory guideline case. But DeVost — it's dipped in DeVost because there wasn't a vacator in there, if I'm remembering it correctly. I don't — I don't think so. I mean, the — this court has said, and other courts, even after the guidelines became mandatory, like Spencer. The government relies on Spencer, but Spencer clearly says a court differentiates between the type of legal error that the government insists that we're making and the type of factual claim that is — that is being made here. And — and the court's mentioned several times, you know, the nature of the state vacating procedures. I — I don't want to lose facts. Well, if that's the case, are you saying that any time facts are shown to be different from what they were at the time the court's calculated guidelines, that you have a complete miscarriage of justice even if the judge didn't sentence within the guidelines? No. This is — this is a narrow set of facts. This is the vacating of a prior state conviction, which is a rarity. But not because your client didn't do it, or because he even asserts he's innocent. Because he wasn't asked. His lawyer was asked. I mean, that — that hardly seems to be a complete miscarriage of justice for the court to have considered that. Well, I don't want to — I don't want the court to lose track of the fact that Mr. Hoskins himself filed the petition to vacate his sentence, and he expressly argued there that he was innocent. Two, the Vermont Supreme Court has said, look, this is — this is not a small error. This is the — this is one of the parts of the plea colloquy that helps us make sure that innocent people aren't pleading guilty to crimes. We think that's — and he wasn't re-prosecuted. You know, the government could — the state government surely could have gone after him, but it chose not to. It was ages old, and he was already doing time, and there are a whole lot of reasons that might inform the prosecutor's decision not to waste resources on a retrial. Those reasons exist, but again, he was not re-prosecuted. They dropped it. He certainly did articulate his claim that he was factually innocent. Thank you, Mr. Johnson. Thank you. Thank you. Rebuttal? Mr. Dara? Thank you. A few points. First of all, as you intimated, Judge Murtha, at the 2012 sentencing, after doing a sentencing guideline calculation, the procedural requirement, did an independent 3553 analysis and determined that the 112-month Rule 11 C1C sentence was reasonable. Secondly, the government cites the four circuits that have held that even when one does receive — Why shouldn't we consider that moving from the 112 months to the 86 months, which is the sentence most recently imposed, reflects the fact that Judge Murtha concluded that there was an effect and there was an impact of that now-vacated Vermont conviction and that there was an impact of the assumption that he was escaping from career offender status. Well, I mean, one of the difficulties of a collateral resentencing four or five years after the original sentencing is it's — so many things have changed that it's hard to know — This is the district judge who imposed the sentence stating on the record that his original sentence was informed by the knowledge that the man was a career offender. Now, when the district judge tells us that, are you saying that even if that is the case, he could not reduce this sentence? Even if that is the case, a sentence shouldn't be reduced unless it is a complete miscarriage of justice, which this sentence wasn't. And — Let me say what I understand Judge Murtha to have indicated, and you tell me what I've misunderstood. He's saying, at the time, I sentenced him to 112 months because I thought he was a career offender. Now that I know he's not a career offender, I am imposing because I would then have imposed a lesser sentence. How is the serving of that greater time, based on a fact that's now been removed from the calculation, why should we not deem that a complete miscarriage of justice? Because if that is a complete miscarriage of justice, then so is every other subsequently established error at a prior federal sentencing. For example, if someone gets an enhancement for — say a drug trafficker gets an enhancement for a firearm, it's a common enhancement, and later that defendant's roommate establishes that it was his firearm and he was a competitive shooter or something, it had nothing to do with the drug trafficking, that comes out four or five years later. That defendant should not be able to come back in front of the judge and say, your prior sentence was informed by the firearms enhancement, and the judge says, well, yes, I would have given you a lower sentence. I mean, that is going to just open the floodgates to all sorts of resentencing. Why? I mean, you know, in this case, Judge Murtha could certainly have said, your career offender status didn't inform my sentence. I sentenced you below the career offender guidelines, so I didn't give that any weight, and therefore, now that you've had it vacated, it doesn't matter. The 112-month sentence stays. In the gun case, the judge could say whether it was a factor that informed his sentence or not, but especially in the 11E1C context, why isn't that something where we look to what the trial judge says? I think because it's not — it doesn't rise to the high bar of a fundamental miscarriage of justice for purposes of collateral review. I mean, that bar is up there so that we don't have to engage in these ongoing, sort of unending sentencing processes where a state court throws out an enhancing prior conviction, or someone finds the gun belonged to someone else, or in a fraud case where some of the loss amount was not really attributable to the fraud, you know, it would never stop. Does it matter whether the underlying conviction was thrown out for a procedural error respecting the allocution, or whether it was thrown out because the defendant managed to show he was actually innocent? I think it may matter. I think if there were actual innocence, then there's an interesting debate as to how that plays — how that would play at the federal sentencing. I mean, under the Supreme Court cases, Davis and Adonzio, it's actual innocence as to the federal conviction upon one's being sentenced, as opposed to actual innocence of an enhancing prior. But nevertheless, there is a debate about that. But here, I don't think we get to that because there was no finding. The defendant did not establish actual innocence as to the Vermont conviction. So very briefly, one other point. We wanted the Court to know that the Supreme Court recently accepted Cersei Arroyo from the Eleventh Circuit in the case of Hughes v. United States. This was a 849 F. 3rd 1008 Eleventh Circuit case. And it goes to the Freeman decision. That was the decision, you'll recall, in which the Supreme Court addressed C deals in the context of reductions of sentences after the Sentencing Commission retroactively reduced sentences. There's a debate between the parties as to how applicable that is. The government urges that Justice Sotomayor's narrow concurring opinion should control eight or nine circuits have so held. The Second Circuit, your court, has not really addressed that clearly. But it appears the Supreme Court is going to take that on in Hughes and decide when you have a split 4-4 decision from the Supreme Court with a concurrence, how that should be treated. Can you judge Sotomayor's concurrence helps you? I mean, she thinks that the sentence is based on the guidelines. Well, as I understand her concurrence, your Honor, she said, you know, on her flanks are four justices that say that one should always be able to get a new sentence when the sentencing guideline is lowered. And then there are four justices who say, no, a C deal is a C deal. You can't change that at all. Justice Sotomayor said in the narrow middle ground, you can sometimes change it. She said if the plea agreement, if the Rule 11 C1C plea agreement is based on the guidelines and refers to the guidelines, then, yes, it can be changed later because it's guideline dependent. But, she says, if it's not, and if there's no mention of the guidelines, such as Hoskin's plea agreement, then it would just subvert Rule 11 to allow one to change it later, and you shouldn't be able to change it. And so that's what we think applies here. We think, actually, Justice Sotomayor's decision would not allow vacating this C deal. Thank you. Thank you both. We'll reserve decision.